# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rodney A. Jacobs,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Jo Anne B. Barnhart, Commissioner of Social Security,<br><br>　　　　Defendant. | CV 05-00381-TUC-CKJ (JCG)<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff Rodney A. Jacobs filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. §§ 405(g). The case has been referred to the United States Magistrate Judge pursuant to the Rules of Practice of this Court.

Pending before the court is a motion for summary judgment filed by Plaintiff on September 19, 2005 (Doc. No. 9), and a cross-motion for summary judgment filed by Defendant Jo Anne B. Barnhart on November 18, 2005. (Doc. No. 14.)

The Magistrate Judge recommends the District Court, after its independent review of the record, enter an order denying Plaintiff's motion for summary judgment and granting Defendant's cross-motion for summary judgment.

**PROCEDURAL BACKGROUND**

On the protective filing date of February 11, 2003, Plaintiff filed an application for disability insurance benefits,[1] claiming back and knee pains that prevent him from working.

---

[1] In 1994, an ALJ found Plaintiff disabled from February, 1993; that disability ceased in October, 1999. (Tr. 16.)

(Tr. 16, 87.)[2] Plaintiff stopped working in May 2002 (Tr. 87), and is currently receiving workers' compensation. (Tr. 65.)

In his application, Plaintiff claimed disability onset of October 2, 2001. (Tr. 65.) The claim was denied both initially (May 2003) and on reconsideration (September 2003). (Tr. 36, 46.) Both times, the disability examiners' primary diagnosis of Plaintiff was "disorders of back (discogenic and degenerative.)" (Tr. 31, 33.) A request for a hearing was timely filed. (Tr. 16.)

On June 9, 2004, a hearing was conducted before the Honorable Administrative Law Judge Mary M. Kunz. (Tr. 347.) Plaintiff appeared with counsel; also appearing were a neutral medical expert and a neutral vocational expert. (Tr. 16.) The ALJ issued a decision denying Plaintiff's claim on December 1, 2004. (Tr. 13.) On December 4, Plaintiff filed a timely request for review. (Tr. 11.) The Appeals Council denied review and upheld the ALJ's decision on April 5, 2005. (Tr. 7.)

On June 9, 2005, Plaintiff timely filed a complaint in this Court pursuant to 42 U.S.C. § 405(g) (Doc. No. 1), to which Defendant filed an answer on July 26, 2005. (Doc. No. 4.) On September 19, 2005, Plaintiff filed a Motion for Summary Judgment (Doc. No. 9), which was followed by Defendant's Cross-Motion for Summary Judgment on November 18, 2005.[3] (Doc. No. 14.) Plaintiff filed a Response and Opposition brief on December 30, 2005. (Doc. No. 20.)

## RECORD ON APPEAL

*I.   Plaintiff's Work History, Condition, and Treatment*

Plaintiff Rodney Jacobs was born on April 2, 1960, graduated high school, and had almost two years of technical school training. (PSOF p. 1; DSOF 1, citing Tr. 95.) His past employment has included work as a brisket cutter at a packing plant, press operator, equipment

---

[2] Citation to the Administrative Record (Doc. No. 5) is abbreviated herein as "TR."

[3] Citations to the record are abbreviated as follows: Plaintiff's Motion for Summary Judgment (PMSJ); Defendant's Motion for Summary Judgment (DMSJ); Plaintiff's Response to Defendant's Motion for Summary Judgment (PR); Plaintiff's Statement of Facts (PSOF); and Defendant's Statement of Facts (DSOF.)

operator, lot attendant, delivery driver, (PSOF p. 1, citing Tr. 112-20), laborer, machine operator, and material manager.  (DSOF 1, citing Tr. 90.)

Plaintiff has had surgery on each knee four times (PSOF p. 1, citing Tr. 141-42, 168, 181), and he wears bilateral braces on both.  (PSOF p. 2, citing Tr. 245.)  He uses intermittently a wheelchair, crutches, a cane, or two Kenny sticks.  (PSOF p. 2, citing Tr. 245, 208, 322, 343.)  He has pursued total knee replacements but was told he was too young.  (PSOF p. 2, Tr. 314.)  Plaintiff underwent lumbar fusion in 1994 (PSOF p. 1, citing Tr. 181), and cervical surgery in 2005.  (PSOF p. 1, citing Ex. 3.)  Plaintiff testified that he is not being treated for his neck and shoulder problems.  (Tr. 357.)  He also testified that, although a cervical discogram in the mid-1990s revealed herniated discs and a pinched sciatic nerve, no one performed the recommended surgery on his neck.  (Tr. 358.)

According to his testimony, Plaintiff's knee, back, and neck pain, along with impairment from medications, prevent him from working.  (Tr. 354.)  Plaintiff said his knee pain is "pretty much constant," worsening when he walks.  (Tr. 354.)  He is able to walk about twenty-five feet before he tires and his knee and back pain increases; he is able to stand for ten minutes and sit for ten to fifteen minutes before his back, knee, and neck pains increase.  (Tr. 355-56.)  Plaintiff also testified that his arms fatigue easily (Tr. 357), and that he has trouble raising them over his head.  (Tr. 358.)

II.    *Expert Testimony*

   a.    *Medical Expert*

Dr. Andrew Steiner reviewed Plaintiff's medical records and testified at the hearing.  (Tr. 366.)  He concluded that there was little to no objective evidence in the record to support Plaintiff's complaints of severe back, neck, and knee pain, nor his complaints of whole-body fatigue. Specifically, he rejected the findings of Dr. D.M. Van Nostrand and Dr. Carol Ness; the former diagnosed Plaintiff with severe spinal disease and the latter diagnosed him with knee instability.  (Tr. 370-71, 375.)  Dr. Steiner also rejected Dr. Van Nostrand's April 2003 finding of laxity in the knee, accepting instead a January 2004 orthopedic exam that did not find such. (Tr. 373.)

Dr. Steiner said Plaintiff's back and knees had a good range of motion. (Tr. 367-68.) He noted that imaging studies showed mild bilateral knee osteoarthritis, but concluded that Plaintiff's ongoing pain reports could not be explained. (Tr. 368.) He acknowledged there were reports of neck pain, but that "we don't really have much information on the etiology of that. . . ." (Tr. 367.) He said that although Plaintiff had a history of problems with his knees, there had been surgeries, and the record did not show any current problems. (Tr. 376.)

Dr. Steiner's opinion was that Plaintiff's medical condition did not meet or equal the Listings (Tr. 368), but that the record did show someone who should be sedentary, with only very occasional kneeling, crouching, bending, twisting, stooping, crawling, climbing, and lifting or reaching above shoulder level. (Tr. 369.) He found nothing in the record to support a finding that Plaintiff could not sit for more than fifteen minutes at a time, or to indicate loss of muscle strength or atrophy. (Tr. 371, 380.)

  *b.* *Vocational Expert*

Wayne Onken, vocational expert, was given this hypothetical by the ALJ:

> [A]ssume for the purpose of these questions that we have an individual who is presently 44, and so is a younger individual. This individual has a high school education and work experience as described in your report. He's impaired by a number of conditions, including some lumbar condition that resulted in a fusion. There was some treatment of neck pain. He was diagnosed with obesity and has had multiple surgeries on the knees on both sides. He takes medications which may result in side effects of fatigue and drowsiness and grogginess. So in the first question, I want you to assume that because of the pain and possible side effects of medication, I would limit him, first of all, to unskilled work. Exertionally, he would be limited to sedentary work involving lifting up to ten pounds occasionally, six hours of sitting and two hours of standing in an eight-hour workday. However, this work should not involved [sic] more than occasional use of any foot pedals, should not involve more than occasional kneeling, crouching, crawling, climbing, bending, twisting, or stopping, no more than occasional reaching or lifting above shoulder level. Should not involve exposure to hazards and should not involve walking more than 100 yards at one time.

Onken replied that a claimant in Plaintiff's position could not perform any of the jobs he has performed in the past because they were all beyond the sedentary level. (Tr. 382.) Onken also testified, however, that there were unskilled, sedentary jobs in the national economy that

1 the Plaintiff could perform, such as lens inserter, final assembler, and hand packer jobs (Tr. 383)
2 and that Plaintiff could still do those jobs even if limited to sitting no more than an hour and
3 standing for no more than ten minutes. (Tr. 383.) However, if Plaintiff were only able to sit
4 for up to fifteen minutes, he could only do the hand packer job. (Tr. 384.)

5 *III.    Medical Evidence*

6 The medical records contained in the administrative file are as follows: Minneapolis
7 VAMC hospital records from September through October 1991 (Tr. 141-54), and July 2002 (Tr.
8 155-77); medical records from Minneapolis VAMC from March 2003 through July 2003 (Tr.
9 185-242) and August 2003 through May 2004 (Tr. 325-45) ; and medical records from St. Cloud
10 VAMC from January 2001 through July 2003 and October 2003 through January 2004. (Tr.
11 243-324.) Also included in the record is a consultative review from March 26, 2003 (Tr. 178),
12 a consultative exam from Dr. Van Nostrand from April 2003 (Tr. 180), and a residual functional
13 capacity assessment from September 2003. (Tr. 299.)

14 According to the medical records, around October 2001, when Plaintiff claims his
15 disability began, he sought medical care for a persistent cough; he did not have any orthopedic
16 complaints at that time. (DSOF 5, citing Tr. 282.) In January 2002, at a wellness exam,
17 Plaintiff said the pain in his knees was "controlled pretty well" by Tylenol, and he denied
18 fatigue. (DSOF 6, citing Tr. 279.) Plaintiff had physical therapy on his knees in August and
19 September 2002. (DSOF 6, citing Tr. 273-78.) In December 2002, Plaintiff reported continuing
20 significant knee pain, but he said he had not experienced significant back problems since back
21 surgery in 1993; he denied orthopedic impairments in his extremities and reported that he
22 stopped doing physical therapy at the VA and was working sporadically with a personal trainer
23 at Gold's Gym. (DSOF 7, citing Tr. 271.) In May 2003, before a right knee arthroscopy,
24 Plaintiff denied any systemic complaints other than knee pain; afterwards he complained of low
25 back pain, neck pain, and headaches. (DSOF 8, citing Tr. 252, 258.)

26 On April 23, 2003, Dr. Van Nostrand examined Plaintiff and endorsed his complaints
27 that he could lift no more than 10 pounds, that he could walk less than 150 feet, and that his
28 primary pain was in his back and knees. (DSOF 9, citing Tr. 180-84.) The doctor reported a

1  "palpable spasm in the trapezius muscles and paracervical musculature, [and that c]ervical
2  distraction and compression [we]re unremarkable"; he noted that cervical fusion had been
3  contemplated in the past and observed that Plaintiff wore braces but was able to ambulate
4  without them.  He also reported "valgus and varus laxity especially involving the left knee."
5  (Tr. 182-83.)   Ultimately, the doctor concluded that Plaintiff had "severe spinal disease
6  involving . . . his cervical lumbar spine," and that Plaintiff "is unable to do any sitting for more
7  then [sic] one hour at a time with much discomfort [and] can only stand for 10 minutes at a
8  time."  (Tr. 183.)

9  On July 1, 2003,[4] Dr. Ness examined Plaintiff, who complained of knee and low back
10 pain.  (DSOF 12.)  Dr. Ness did not find any limitations during her examination of Plaintiff's
11 neck and arms.  (Tr. 320.)  She noted normal knee extension, no atrophy, and limited flexion.
12 (Tr. 320.)  She noted that Plaintiff appeared in no acute distress, except for when ambulating,
13 and that his gait was wide-based and very slow and measured.  (Tr. 319.)  She conducted a
14 "limited examination" for knee instability, but was unable to do a full exam because of
15 Plaintiff's discomfort. (Tr. 321.) Dr. Ness considered Plaintiff probably unemployable because
16 of his limited ability to walk and sit.  (Tr. 322.)

17 That same month, Nurse Ellen Ellickson examined Plaintiff and noted that he had normal
18 arm strength, diminished leg strength, and full range of motion of his neck; she observed that
19 Plaintiff had braces on both knees and walked with two Kenny sticks, and similar to Dr. Ness,
20 described his gait as labored.  (Tr. 245.)  Nurse Ellickson considered Plaintiff unemployable
21 because of his weakness, fatiguability, and poor endurance.  (DSOF 10, citing Tr. 246-48.)
22 Also in July 2003, two physicians at the Minneapolis VAMC determined Plaintiff could only
23 perform sedentary work with minimal walking.  (DSOF 11, citing Tr. 187.)

24 In February 2004, the VA concluded that Plaintiff was entitled to individual
25 unemployability due to pain, fatigue, and knee weakness.  (DSOF 13, citing Tr. 129-30.)

---

[4] Defendant and the ALJ both stated that this exam took place in October, 2003 (DSOF 12), but the record indicates that it took place in July, 2003, with a repeat dictation taking place in October, 2003.  (Tr. 317.)

- 6 -

## CLAIM EVALUATION

*I.   Legal Standard*

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520; *Baxter v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir.1991). The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b). If so, then the claimant is not disabled and benefits are denied. *Id.*

If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two, which requires a determination of whether the claimant has a "medically severe impairment or combination of impairments." 20 C.F.R. §§ 404.1520(c). In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment more than minimally limits or restricts his or her "physical or mental ability to do basic work activities." *Id.* If the ALJ concludes the impairment is not severe, the claim is denied. *Id.*

Upon a finding of severity, the ALJ proceeds to step three, which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir.1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity[5] (RFC) to perform past work. 20 C.F.R. §§ 404.1520(e). If the ALJ concludes the claimant has sufficient RFC, then the claim is denied. *Id.*

---

[5]   Residual functional capacity is defined as that which an individual can still do despite her limitations. 20 C.F.R. § 404.1545.

If the claimant cannot perform any past work due to a severe impairment, then the ALJ must move to the fifth step which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education, and work experience.  20 C.F.R. §§ 404.1520(f).

*II.     The ALJ's Findings*

The ALJ made the following findings:

1.     Plaintiff met the nondisability requirements for a period of disability and disability insurance benefits set forth in Section 216(i) of the Social Security Act on October 2, 2001, his alleged onset date of disability, and is insured for benefits through the date of this decision;

2.     Plaintiff has not engaged in substantial gainful activity since October 2, 2001;

3.     Plaintiff's status post lumbar fusion in 1993, status post multiple bilateral knee surgeries for ligament and meniscus repair, mild bilateral osteoarthritis, and obesity are considered "severe" based on the requirements in the Regulations 20 C.F.R. §404.1520(c);

4.     These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4;

5.     Plaintiff's allegations regarding his limitations were not totally credible;

6.     Plaintiff has the following residual functional capacity: unskilled work, lifting and carrying no more than ten pounds at a time, walking or standing two hours out of an eight-hour day, sitting six hours out of an eight-hour day, with no more than occasional foot pedals, and occasional kneeling, crouching, crawling, climbing, bending, twisting, stooping, reaching, or lifting above shoulder level, no walking more than 100 yards without a rest, and no work around hazards;

7.     Plaintiff is unable to perform his past relevant work as a meat boner, tree trimmer, collator operator, heavy truck driver, industrial truck operator, automobile detailer, material handler, or welding-machine tender (20 CFR § 404.1565);

8.     Plaintiff is a younger individual (20 CFR § 404.1563);

9.     Plaintiff has a high school education plus three years of college (20 CFR § 404.1564);

1   10. Plaintiff has a semi-skilled and unskilled background with no transferable skills within his residual functional capacity (20 CFR § 404.1568);

11. Considering Plaintiff's residual functional capacity, age, education, and relevant work history, he is able to make a vocational adjustment to work that exists in significant numbers in the national economy, examples of which are: lens inserter, final assembler, and hand packager; and

12. Plaintiff was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(g)).

Based on these findings, the ALJ concluded that Plaintiff was not entitled to a period of disability or to disability insurance benefits with respect to the application filed on February 11, 2003. (Tr. 27-28.) The ALJ's determination was made at step five of the inquiry process: the ALJ concluded that Plaintiff retained the residual functional capacity to perform other work that exists in significant numbers in the national economy.

## ANALYSIS

*I.   Standard of Review*

An individual is entitled to SSI disability benefits if he or she demonstrates, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 1382c(a)(3)(A). "[A] claimant will be found disabled only if the impairment is so severe that, considering age, education, and work experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993) (*quoting Marcia v. Sullivan,* 900 F.2d 172, 174 (9th Cir. 1990)).

To establish a *prima facie* case of disability, the claimant must demonstrate an inability to perform his or her former work. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984). Once the claimant meets that burden, the Commissioner must come forward with substantial evidence establishing the claimant is not disabled. *Fife v. Heckler*, 767 F.2d 1427, 1429 (9th Cir. 1985).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The Court may overturn the decision to deny benefits "only if it is not supported by substantial evidence or it is based on legal error." *Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted). The Commissioner's determination that a claimant is not disabled must be upheld if the Commissioner applied the proper legal standards and the record as a whole contains substantial evidence to support the decision. *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990) (citing *Desrosiers v. Secretary*, 846 F.2d 573, 575-76 (9th Cir.1988); *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *Winans v. Bowen,* 853 F.2d 643, 644 (9th Cir.1987). The standard is less than a "preponderance of the evidence" standard. *Matney,* 981 F.2d at 1019.

"[I]f the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney,* 981 F.2d at 1019 (citing *Richardson,* 402 U.S. at 400). When applying the substantial evidence standard, however, the court should not mechanically accept the Commissioner's findings but should review the record critically and thoroughly. *Day v. Weinberger*, 522 F.2d 1154 (9th Cir.1975). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Id*. at 1156. A denial of benefits will be set aside if the Commissioner fails to apply proper legal standards in weighing the evidence even though the findings may be supported by substantial evidence. *Frost v. Barnhart*, 314 F.3d 359, 367 (9th Cir. 2002); *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir.1978).

In evaluating evidence to determine whether a claimant is disabled, the opinion of a treating physician[6] is entitled to great weight. *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir.1993). The Commissioner may reject a treating physician's uncontradicted opinion only if

---

[6] The term "physician" includes psychologists and other health professionals who are not medical doctors. *Lester v. Chater*, 81 F.3d 821, 830 n.7 (9th Cir.1995).

- 10 -

she sets forth clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995); *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989). If the treating physician's opinion is contradicted by another doctor, the Commissioner may reject that opinion only if she provides specific and legitimate reasons supported by substantial evidence in the record. *Lester,* 81 F.3d at 830. No distinction is drawn "between a medical opinion as to a physical condition and a medical opinion on the ultimate issue of disability." *Rodriguez v. Bowen*, 876 F.2d 759, 761 n.7 (9th Cir.1989).

When medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the Commissioner. *Magallanes,* 881 F.2d at 751 (citations omitted). The Commissioner's finding that a claimant is less than credible, however, must have some support in the record. *See Light v. Social Security Administration,* 119 F.3d 789 (9th Cir.1997).

The ALJ need not accept the claimant's subjective testimony of disability, but if he decides to reject it, "[he] must provide specific, cogent reasons for the disbelief." *Lester,* 81 F.3d at 834. "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*

*II.   Discussion*

Plaintiff presents three challenges to the ALJ's findings: (1) the ALJ lacked substantial evidence for finding Plaintiff did not have a severe neck impairment; (2) the ALJ did not consider a VA determination that Plaintiff was disabled, as required by law; and (3) the ALJ improperly discounted the opinions of two examining physicians in favor of the non-examining, testifying expert. The Magistrate Judge recommends finding in favor of the Defendant on all three challenges.

    *a.   Substantial evidence supported the ALJ's finding that Plaintiff did not have severe neck pain.*

- 11 -

Plaintiff argues that the ALJ improperly dismissed the severity of Plaintiff's neck condition, and that the Court should reverse and grant benefits. (PMSJ 8-9.) Alternatively, Plaintiff asks the Court to remand for consideration of material new evidence, specifically: (1) a recent MRI that documents a neck condition, and (2) the fact of a post-hearing cervical surgery.

The ALJ found that Plaintiff's neck pain was not a severe impairment[7]. (Tr. 19.) Her finding was supported by substantial evidence. She noted that Plaintiff's complaints of neck pain were occasional, that no diagnoses had been made regarding neck pain and that Plaintiff had not been prescribed medications or treatment for neck pain. (Tr. 18.) The ALJ noted that Plaintiff's range of motion of his cervical spine was determined to be adequate in January 2001 and that his neck examination in January 2002 was unremarkable. (*Id*.) She also found that Plaintiff had not reported neck pain during examinations in January 2001, January 2002, or in more recent examinations, including visits in January and December 2002 (Tr. 18), and Plaintiff's July 2003 exam by the VA to determine disability. (Tr. 244, 317-18.) Plaintiff also testified that he had not been treated for neck problems since 1998 or 1999. (*Id*.) The neutral medical expert found no information on ideology or ongoing treatment associated with Plaintiff's reports of neck pain. (Tr. 19.)

Plaintiff argues that the ALJ's finding overlooks the following evidence that Plaintiff's neck pain was severe: (1) during a January 2001 exam, Plaintiff said he had an EMG in December 2000 because of neck pains (PMSJ p. 8, citing Tr. 288); (2) in February 2001, Plaintiff visited the VA because of neck pain and reported increased and constant neck pain (PMSJ p. 8, citing Tr. 232); (3) in July 2002, Plaintiff mentioned neck problems in a pre-anesthesia report prior to knee surgery (PMSJ p. 8, citing Tr. 159); (4) in April 2003, Plaintiff told a doctor that "cervical fusion had been contemplated in the past" (PMSJ p. 8, citing Tr.

---

[7] Although she found the neck pain to be non-severe, the ALJ considered Plaintiff's testimony regarding difficulty reaching above his head due to neck pain in consideration in reducing Plaintiff's residual functional capacity to occasional reaching, or lifting above shoulder level. (Tr. 25.)

- 12 -

182); and (5) in June 2003, Plaintiff reported neck, lower back, and right knee pain. (PMSJ p. 8, citing Tr. 251; DSOF 8, citing Tr. 252.) This evidence of neck pain is intermittent, however, and based primarily on the Plaintiff's own subjective complaints, which the ALJ found not totally credible.[8] The ALJ's decision must be upheld if the evidence is reasonably susceptible to more than one rational interpretation. *Allen*, 726 F.2d at 1473. Because the ALJ was confronted with a series of subjective complaints by Plaintiff about his neck (complaints that were not consistently voiced during medical examinations) and a lack of objective evidence supporting a finding of neck impairment, this Court concludes that the ALJ's finding was reasonable and supported by substantial evidence.

Plaintiff has argued, in the alternative, that the Court should remand in light of new evidence demonstrating a severe neck impairment. The new evidence in question is an MRI taken seven months after the hearing, which showed a "severe narrowing and mild to moderate stenosis," and a cervical surgery "to 'take the pressure off the spinal cord and to remove pressure from the various nerve roots" after the Appeals Council issued its decision. (PMSJ p. 9.) Plaintiff argues that this new evidence demonstrates that Plaintiff had an ongoing cervical condition in existence at the time of the ALJ hearing, and claims that the ALJ's opinion would have been different if this evidence had been considered.

Under § 405(g), the Court may "at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (2000); *see also Wainwright v. Sec'y of Health & Human Servs.*, 939 F.2d 680, 682 (9th Cir. 1991). "New evidence is material if it 'bear[s] directly and substantially on the matter in dispute,' and if there is a 'reasonable

---

[8] The ALJ need not accept the claimant's subjective testimony of disability, but if he decides to reject it, "[he] must provide specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834. The ALJ discounted Plaintiff's credibility in this case because Plaintiff had demonstrated an unwillingness to follow prescribed medical treatment and likely had an economic disincentive to go back to work due to receipt of a sizable monthly VA pension. (Tr. 26.)

- 13 -

possibility that the new evidence would have changed the outcome of the determination.'" *Bruton v. Massanari*, 268 F.3d 824, 827 (9th Cir. 2001) (quoting *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984)).

The new evidence presented by Plaintiff is arguably material, as it bears directly on the issue of whether Plaintiff had a severe neck impairment. The ALJ's finding that Plaintiff did not have severe neck pain was based primarily on the lack of objective support for such a finding. If such objective evidence had been before her, there is a reasonable possibility her decision on this issue would have been different. Plaintiff is not entitled to relief on this ground, however, because Plaintiff has failed to demonstrate good cause for not submitting the evidence during the original hearings.

The good cause requirement is liberally applied if it does not appear the Secretary will be prejudiced. *Burton v. Heckler*, 724 F.2d 1415, 1417-18 (9th Cir. 1984). To demonstrate good cause, the claimant must demonstrate that the new evidence was unavailable earlier. *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985) ("If new information surfaces after the Secretary's final decision and the claimant could not have obtained that evidence at the time of the administrative proceeding, the good cause requirement is satisfied."). But the liberal application can only be pushed so far. "A claimant does not meet the good cause requirement by merely obtaining a more favorable report once his or her claim has been denied." *Mayes v. Massanari*, 276 F.3d 453, 462-63 (9th Cir. 2001) (finding lack of good cause to remand for evidence showing herniated discs where claimant had noted "spinal problems" on her initial application for disability benefits, but had said only that her back hurt at the ALJ hearing, instead complaining mostly of other medical problems). Plaintiff does not show that the objective evidence of his neck problems was unavailable at the time he applied for benefits or even at the time of his hearing in June, 2004. Plaintiff's only justification for failing to obtain the MRI or the surgery prior to filing his claim is that he tried to obtain a cervical consultation eight months before his disability onset date (PSOF p. 2, citing Tr. 232), but that his condition was not adequately assessed until he moved to Tucson. (PSOF p. 2, citing Exs. 1 & 2.) Presumably, Plaintiff's argument is that he could not get objective evidence on his neck despite

trying; thus, because the evidence did not exist before the hearing and he could not get it before the hearing, he had good cause for not submitting it.  However, the Court notes that Plaintiff's initial attempt to obtain a cervical consultation took place in February, 2001, and that more than three years passed before the ALJ hearing took place in June, 2004.  Plaintiff does not explain whether he made (or if not, why he did not make) additional attempts to have his neck examined or treated in the more than three years before the hearing.  Moreover, during this same time period, Plaintiff failed to complain about his neck in a number of medical consultations.  This would suggest that the Plaintiff only felt a need to pursue his neck ailments after being denied disability benefits – which is not good cause under *Mayes*.  Plaintiff does have the remedy of re-applying for benefits if he believes he is currently disabled by his neck impairment.

Because Plaintiff has failed to plead good cause for failing to bring forth this evidence, and because the Court does find such in the record, there is no reason to remand for further proceedings.

### *b.   The ALJ Properly Considered the VA Disability Rating in Accordance with Eighth Circuit Law.*

Plaintiff next argues that the ALJ did not consider a Veteran's Administration rating finding Plaintiff unemployable in accordance with governing law.  Plaintiff argues that the Ninth Circuit requires an ALJ to give "great weight" to a VA determination of disability, or must give "persuasive, specific, valid reasons" for failing to do so.  (PSOF pgs. 10-11, citing *McCartney v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002)).  Although Plaintiff correctly recites the Ninth Circuit legal standard, the hearing before the ALJ took place in St. Cloud, Minnesota – in the Eighth Circuit.  (Tr. 16.)  This Court may only overturn the decision of the ALJ if it is based on legal error.  *Matney,* 981 F.2d at  1019.  An ALJ sitting in the Eighth Circuit cannot be said to have committed legal error for failing to apply the laws of a sister circuit.  *See* 20 C.F.R. § 404.985 (stating that Social Security Administration ALJs, to the extent that they apply the holdings of United States Court of Appeals decisions during the administrative review process, look to the law of the circuit in which they are located).

Accordingly, this Court will review the ALJ's treatment of the VA's findings pursuant to Eight Circuit law.

Eighth Circuit law requires the ALJ to consider the VA's finding of disability, but the ALJ is not bound by the disability rating of another agency when he is evaluating whether the claimant is disabled for purposes of social security benefits. *See Pelkey v. Barnhart*, 433 F.3d 575, 579 (8th Cir. 2006) (citations omitted). An ALJ is regarded as having properly considered the VA's findings if it fully considers the evidence underlying the VA's final conclusion. *Id*.

In this case, the ALJ acknowledged that the VA had found Plaintiff unemployable: she noted that Dr. Ness examined Plaintiff for purposes of VA employability, that Dr. Ness concluded that Plaintiff was probably not employable, and that Plaintiff was receiving a VA "pension" which, according to the record, is actually a VA unemployment benefit. (Tr. 24, 79.) Although the ALJ did not expressly state that she was required to consider the VA's finding, she fully considered the evidence underlying the VA's final conclusion: the opinion of Dr. Ness. (Tr. 24.) The ALJ stated that Dr. Ness's opinion was not entitled to significant weight because it was based in part on Plaintiff's subjective complaints, the examination was conducted specifically for the purpose of determining employability, the examination was limited, and the examination was in conflict with other medical evidence in the record. (Tr. 22-23, 24.) Accordingly, the ALJ properly considered the evidence underlying the VA's final conclusion, in compliance with Eighth Circuit law.[9]

    *c.    The ALJ properly discounted the opinions of two examining physicians in favor of the non-examining, testifying expert*

Plaintiff contends that the ALJ improperly adopted the opinion of the medical advisor, Dr. Steiner, in place of the medical advisors who actually examined Plaintiff – Dr. Carol Ness and Nurse Ellen Ellickson. The ALJ concluded that Nurse Ellickson's opinion was not entitled

---

[9] This Court concludes that even if the Ninth Circuit standard set forth in *McCartney* was applied, the ALJ's holding should be upheld as the ALJ provided specific, valid reason for rejecting the VA's conclusion. See also 20 C.F.R. § 404. 1504 (205) (determinations by other agencies are not binding on the Social Security Administration).

- 16 -

to significant weight, because it was not supported by the record. The ALJ also concluded that Dr. Ness's opinion was not entitled to significant weight, because it was based in part on Plaintiff's subjective complaints, which the ALJ did not find credible. In addition, the ALJ found that Dr. Ness's examination was limited and conducted for the purpose of determining employability.

The ALJ is not bound by an expert's opinions. However, the uncontroverted opinions of claimant's physicians may only be rejected if the ALJ gives clear and convincing reasons for doing so. *Reddick*, 157 F.3d at 725 (quoting *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993)). The opinion of a non-examining medical expert is not alone substantial evidence sufficient to justify rejecting examining or treating physician's opinions. *Morgan*, 169 F.3d at 602. However, it can comprise part of the basis on which such opinions can be rejected. *Id*. Medical opinion may be discounted if it is inconsistent-either internally, with other medical reports, or with the claimant's testimony. *Id*. at 603. Also, it may be discounted if it is "'premised to a large extent'" on the claimant's properly discounted complaints. *Id.* (citing *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)).

The opinions of Dr. Ness and Nurse Ellickson were not uncontroverted. Rather, their opinions were contradicted by the opinions of (1) Dr. Steiner, who specializes in physical medicine and rehabilitation and who reviewed all of the testimony and medical evidence presented at the hearing, (2) Dr. Santos, an orthopedic specialist who examined Plaintiff in October, 2003, and opined that the magnitude of Plaintiff's pain did not correlate with objective evidence, (3) Dr. Esteberg, an orthopedic specialist who reviewed Plaintiff's medical records and opined that there were no clear objective findings consistent with Plaintiff's pain pattern, (4) Dr. Grierson, an orthopedic specialist who opined that Plaintiff could work at a sedentary job that required minimal walking and bending and no heavy lifting, and (5) Drs. Kawjecki and Phipps, who reviewed Plaintiff's medical records and whose opinions were consistent with the medical evidence. (Tr. 20-24.) Thus, the ALJ was not obliged to accept the opinions of Dr. Ness and Nurse Ellickson; she had clear and convincing reasons for doing so.

The ALJ's decision to discount the opinions of Dr. Ness and Nurse Ellickson was well-supported by the record. First, Dr. Ness' and Nurse Ellickson's opinions were inconsistent with the medical evidence presented. Dr. Ness opined that Plaintiff was not employable because of knee and back pain, but his medical records showed few to no complaints of back pain during examinations, and his orthopedic examinations showed that Plaintiff had good range of motion, little instability and no atrophy in his knees. (Tr. 24.) Nurse Ellickson concluded that Plaintiff suffered from fatigue, weakness and pain, but Dr. Steiner testified that Plaintiff did not suffer from any medical conditions that would account for fatigability, and that the muscle conditions around Plaintiff's knees did not indicate fatigability. Dr. Steiner found no evidence that Plaintiff had lost muscle strength. In addition, Plaintiff's orthopedist had opined that radiographic pictures did not correlate well with the magnitude of Plaintiff's symptoms. (Tr. 24.)

Second, Dr. Ness' and Nurse Ellickson's opinions were premised to a large extent on Plaintiff's complaints, which the ALJ found not credible. Dr. Ness stated that she based her opinion in part on Plaintiff's complaints. In addition, she ultimately concluded Plaintiff could not work because of back and neck pain, but her examination of Plaintiff's knees was limited due to Plaintiff's reports of discomfort, and her finding of back pain appears to have been based entirely on Plaintiff's reports. Thus, Dr. Ness' reasons for finding Plaintiff unable to work stemmed directly from Plaintiff's complaints. Nurse Ellickson's stated reasons for finding Plaintiff unemployable were his weakness, fatigability, and poor endurance. While her opinion was not based entirely on subjective complaints – she did perform a limited examination – the ALJ concluded Nurse Ellickson 's opinion also relied heavily on subjective complaints.

The ALJ cited specific and proper reasons for discounting the opinions of Dr. Carol Ness and Nurse Ellen Ellickson, both of which found Plaintiff unemployable. Dr. Ness's and Nurse Ellickson's opinions were properly rejected because they were inconsistent with the other medical records and the testifying medical expert's opinion, and because substantial evidence supported the finding they were premised to a large extent on Plaintiff's subjective complaints.


**RECOMMENDATION**

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review, enter an Order denying Plaintiff's Motion for Summary Judgment. (Doc. No. 9) and granting Defendant's Cross-Motion for Summary Judgment (Doc. No. 14).

Pursuant to 28 U.S.C. § 636(b), any party may file and serve written objections within 10 days after being served with a copy of this Report and Recommendation. If objections are not timely filed, the party's right to *de novo* review may be waived. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc), *cert. denied*, 540 U.S. 900 (2003). If objections are filed, the parties should direct them to the District Court by using the following case number: **CV 05-381-TUC-CKJ**.

The Clerk of the Court is directed to send a copy of this Report and Recommendation to all parties.

**DATED** this 2nd day of November, 2006.

_____
Jennifer C. Guerin
United States Magistrate Judge